IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MARNITA L. MCGRUDER<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant, | ) | Civil Action<br><br>No. 03-441C (Judge Allegra) |

PLAINTIFF'S STATUS REPORT

McGruder submits her status report on the ongoing proceedings before the Army Board for Correction of Military Records. Ms. McGruder and her counsel received on October 31, 2005, the approved decision of the BCMR granting her substantial relief. As the agency adjudication affords a satisfactory result, McGruder submits separately her notice of voluntary dismissal.

Last week, counsel for McGruder made numerous phone calls to determine the status of the BCMR reconsideration. On October 25, counsel finally contacted a live person— an official at the Army Review Boards Agency's legislative affairs office, Mr. Rick Schweigert. After explaining the court's order, the official researched the matter. He said a favorable decision was approved by the Army Secretary's delegate on October 3, but due to error it was never sent to counsel or McGruder. An unsigned copy was faxed to counsel.

On October 31, counsel and Ms. McGruder received the signed, approved decision. See attached Exhibit A (postmarked October 26). On equitable grounds, the BCMR granted the following relief after finding her 1997 discharge was an injustice within the meaning of 10 U.S.C. § 1552(a): (1) voided Ms. McGruder's 1997 involuntary discharge for weight control failure; (2) reinstated her constructively to active duty to permit voluntary retirement at 20 years, 24 days on February 1, 2000, at her last grade held of E-7; (3) awarded back active duty and retired pay; (4) removed from her records entries relating to her weight control program enrollments. However,

the BCMR did not grant full legal relief of retiring her at the normal expiration of her enlistment ending April 2001, and did not order promotion reconsideration to grade of E-8.

Notwithstanding her disappointment of not securing all the relief requested, the BCMR decision granted her substantial relief. Ms. McGruder has conferred with her undersigned counsel on whether to reopen the Court proceedings to seek back pay on the balance of her final enlistment, particularly because the statute of limitations will lapse upon dismissal of her 1997 back pay claim. Counsel has researched the case law and her facts under the "half-a-loaf" doctrine. Sanders v. United States, 594 F.2d 804, 813 (Ct. Cl.1979)("when a soldier has convinced the BCMR to correct his record it must not give only 'half-a-loaf' of relief but make him whole"); Yee v. United States, 512 F.2d 1383, 1387 (Ct.Cl. 1975); Debow v. United States 434 F.2d 1333 (Ct. Cl. 1970). However, these and others cases relied on purely legal errors found by the correction boards, whereas McGruder's board found only equitable error. Ms. McGruder understands it is unsettled whether the doctrine applies to her unique situation— when the BCMR did not find her 1997 discharge unlawful as violating procedures in effect in 1997, but rather was an injustice when subsequent scientific studies adopted by DoD showed the Army's weight control program discriminated against African-American females. Ms. McGruder has also considered, on this new evidence, whether to reopen the litigation to fully reargue that her 1997 discharge was illegal as arbitrary and capricious agency action.

Having considered these options, Ms. McGruder has decided to end her eight-year odyssey because the BCMR decision granted her significant relief. Although this Court case was suspended and not remanded under RCFC 56.2(b)(4), for convenience McGruder declares that after reconsideration by the BCMR, the relief granted by that agency affords her a satisfactory disposition of the back pay claim at the administrative level, and further proceedings before the court are not desired. She concurrently submits a notice of voluntary dismissal under RCFC 41(a)(1). Voluntary dismissal is appropriate because the Court earlier dismissed with prejudice all her claims on the original complaint, while no responsive pleading was filed by defendant against her amended complaint.

November 2, 2005 Respectfully submitted

s/ John A. Wickham
Counsel for McGruder
32975 Saint Moritz Drive
Evergreen CO 80439-6720
303 670-3825

DEPARTMENT OF THE ARMY
ARMY REVIEW BOARDS AGENCY
1901 SOUTH BELL STREET
CRYSTAL MALL 4, 2ND FLOOR
ARLINGTON, VIRGINIA 22202-4508

OFFICIAL BUSINESS

049J82023039
$00.600
10/26/2005
Mailed From 22202
US POSTAGE

FIRST CLASS

**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

October 3, 2005

AR20050002764 (McGruder, Marnita L.)

Mr. John A. Wickham, Esq.
32975 St. Mortiz Drive
Evergreen CO 80439

Dear Counsel:

The Army Board for Correction of Military Records has reviewed the application pertaining to Ms. Marnitia L. McGruder and final action has been directed in this matter, under the provisions of Section 1552 of Title 10, United States Code, and Army Regulation. A copy of the Board's decision has been forwarded to your client.

Thank you for your interest in this matter.

Sincerely,

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure

**DEPARTMENT OF THE ARMY**
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
1901 SOUTH BELL STREET, 2ND FLOOR
ARLINGTON, VA 22202-4508

SFMR-RB

October 3, 2005

MEMORANDUM FOR US ARMY REVIEW BOARDS AGENCY SUPPORT DIVISION, ST. LOUIS (SFMR-RBR-SL), 9700 PAGE AVENUE, ST. LOUIS, MO 63132-5200

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for McGruder, Marnita L., SSN 252112837, AR20050002764

1. Under the authority of Title 10, United States Code, section 1552, the recommendation of the Army Board for Correction of Military Records is hereby approved, and I direct that all of the Department of the Army records of the individual concerned be corrected as shown under Recommendation in the Proceedings of the Board in the subject case enclosed.

2. Request necessary administrative action be taken to effect the correction of records as indicated no later than **January 31, 2006**. Further, request that the individual concerned and counsel, if any, as well as any Members of Congress who have shown interest be advised of the correction and that the Army Board for Correction of Military Records be furnished a copy of the correspondence.

BY ORDER OF THE SECRETARY OF THE ARMY:

Signed

Encl

Karl F. Schneider
Deputy Assistant Secretary
(Army Review Boards)

CF:
( )Applicant
( )Counsel

Printed on Recycled Paper

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

# RECORD OF PROCEEDINGS

IN THE CASE OF: MCGRUDER, MARNITIA L.

BOARD DATE: 22 September 2005
DOCKET NUMBER: AR20050002764

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Mr. Joseph A. Adriance | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. James E. Anderholm | Chairperson |
| Mr. Bernard P. Ingold | Member |
| Mr. Michael J. Flynn | Member |

The Board considered the following evidence:

Exhibit A - Application for correction of military records.

Exhibit B - Military Personnel Records (including advisory opinion, if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests, in effect, reconsideration of her earlier application requesting revocation of her 24 August 1997 discharge for weight control program failure; reinstatement on active duty for the remainder of her 4 April 1997 enlistment; honorable retirement at the completion of her enlistment; reconsideration for promotion to master sergeant/E-8 (MSG/E-8) by a Stand-By Advisory Board (STAB); removal of all documentation related to her discharge and weight control program enrollments in 1994, 1996 and 1997; and insertion of a non-prejudicial statement explaining non-rated time prior to consideration by a STAB.

2. The applicant states, in effect, that her evidence and argument is provided by counsel.

COUNSEL'S REQUEST, STATEMENT AND EVIDENCE:

1. Counsel requests, in effect, that the applicant's 24 August 1997 discharge for failure of weight control program (WCP) be set-aside; that the applicant be reinstated on active duty for the remainder of her 4-year reenlistment (reenlisted 4 April 1997) to permit honorable retirement on 4 April 2001; back active duty, and retired pay and allowances; reconsideration for promotion to MSG/E-8 by a STAB; removal of all documents related to the applicant's discharge and WCP enrollments in 1996 and 1997; and insertion of a non-prejudicial statement explaining non-rated time.

2. Counsel states, in effect, this reconsideration request is submitted pursuant to court orders on 18 January 2005, which suspended proceedings permitting the applicant to raise new legal arguments and evidence that arose after litigation began. Counsel claims the amended complaint reframes the issues based on new evidence that was not considered by the Army Board for Correction of Military Records in 1999 or 2001. Counsel states that what the ABCMR failed to specifically consider was the challenge to the scientific reliability or validity of the Army's body fat equations applied to women in 1997, which were used in the discharge policy for WCP failures. Counsel states that under revised Department of Defense (DOD) body fat equations, the applicant likely never would have been discharged, but rather found within body fat standards and retained.

3. Counsel states that although not expressly retroactive, the bases for the new DOD standards are recent medical studies showing the Army's equations in 1997 produced inflated body fat estimates for women in general, and further did not scientifically account for the different body types of African-American women, thus producing widely inconsistent and arbitrary results.

4. Counsel claims the lack of express retroactivity in the new DOD regulations does not impair the applicant's back pay claim because the intent and practical effect of the new standards invalidates the basis for her discharge as a WCP failure. First, the new DOD standards are not merely a policy change, but show the Army's former standards for women were not scientifically valid, and disproportionately adversely impacted African-American female Soldiers. Counsel claims that when applying the new DOD standards in an Army study, there was a decrease of 30 percent (%) of women currently classified as overweight under Army equations and enrolled in the WCP. This decrease applied to women near the limits of current Army standards, thereby including the applicant who exceeded the 34% limit by about 1/2% in early 1997. Secondly, the highly inconsistent passing and failing of body fat estimates by the applicant at the same weights are now likely explained as the arbitrary result of an equation biased against her ethnic/racial body type.

5. Counsel provides the following documents in support of the application: Applicant Supplemental Statement; GAO Report to Congress (November 1998); Naval Health Research Center Report (1999); United States Army Medical Research & Materiel Command Report (1999); DOD Instruction (DODI) 1308.3 (1995) and DODI 1308.3 (2002).

CONSIDERATION OF EVIDENCE:

1. Incorporated herein by reference are military records which were summarized in the previous consideration of the applicant's case by the Army Board for Correction of Military Records (ABCMR) in Docket Number AR2000047533, on 10 May 2001.

2. During its original review of the case, the Board found the applicant's separation for failure to meet weight control standards was accomplished in accordance with the governing regulation. As a result, it concluded there was no basis for granting the requested relief.

3. The applicant and counsel now argue that studies conducted by the GAO, Naval Health Research Center, and United States Army Medical Research & Material Command between 1998 and 1999 revealed the Army's equations in 1997 produced inflated body fat estimates for women in general, and did not scientifically account for the different body types of African-American women thus producing widely inconsistent and arbitrary results. Counsel and the applicant indicate these studies resulted in a revision of the applicable DOD standards, which if applied in the applicant's case, would likely have resulted in her meeting the WCP standards.

4. The applicant's record shows her percent (%) of body fat was measured on the following dates and produced the results indicated: 4 April 1996, 37.85%; 19 August 1996, 37.17%; 6 September 1996, 36.44%; 4 October 1996, 35.70%; 5 November 1996, 34.58%; 18 November 1996, 37.80%; 18 November 1996, 37.03%; 27 November 1996, 36.50%; 6 December 1996, 35.67%; 3 January 1997, 33.39%; 5 February 1997, 34.79%; 7 February 1997, 34.58%; 7 March 1997, 33.54%; 4 April 1997, 33.54%; 18 April 1997, 33.40%; 2 May 1997, 35.16%; 5 May 1997, 33.80%; 17 July 1997, 35.58%; 29 July 1997, 33.10%; and 31 August 1997, 34.76%.

5. DODI 1308.3 (DOD Physical Fitness and Body Fat Programs Procedures), dated 5 November 2002, implements policy, assigns responsibility and prescribes procedures governing physical fitness and weight/body fat standards in the Armed Forces. Paragraph 6.2 contains guidance on body fat programs. It states, in effect, that the military services will design body fat programs that maintain optimal body weight, and more specifically, optimal body fat content. The DODI policy specifies that the Military Services will design, implement and tailor body fat programs to suit the particular needs and mission of the DOD, and their respective services, consistent with established scientific principles of nutrition, body fat composition, and body fat measurement.

6. DODI 1308.3 further stipulates that Military Services are responsible to establish body fat standards that are not more stringent than 18 percent for men and 26 percent for woman, nor more liberal than 26 percent for men and 36 percent for woman. Enclosure 3 establishes height and weight measurement procedures, and indicates the circumference sites and landmarks for females are the neck, waist and hip, and it specifies how these measurements will be accomplished.

7. Army Regulation 600-9 (Army Weight Control Program) establishes policies and procedures for the implementation of the Army WCP. The current version of the regulation has been in effect since 10 June 1987. Section III contains guidance on proper weight control, and Table 2 provides the maximum allowable body fat percentage. For Soldiers in the age group 28-39, the maximum allowable body fat percentage is 24% for male Soldiers, and 34% for female Soldiers. Appendix B establishes the standard methods for determining body fat using body circumferences, height and weight. The circumference sites and landmarks for females are identified as the neck, forearm, wrist and hip. The maximum allowable body fat percentage for females in the age group 28 through 39 is established as 34 percent.

<u>DISCUSSION AND CONCLUSIONS</u>:

1. The new argument and evidence submitted by the applicant and her counsel has been carefully considered. The evidence of record confirms, as established during the original review of this case, that the applicant's WCP enrollment and separation processing were accomplished in accordance with the governing Army regulation and DOD policy in effect at the time.

2. The evidence further shows that the inconsistencies with the WCPs of various Military Services, as established in the studies submitted by counsel, resulted in a revision of the DOD policy to provide standardization throughout the Military Services. The new policy does not call into question the validity of the applicant's separation processing; however, it does raise equity issues that warrant further consideration.

3. The new DODI 1308.3 stipulates that the military services can establish a body fat measurement standard for women that is no more stringent than 26 nor more liberal than 36 percent. The record shows the applicant's body fat measurement at the time of her separation was 34.76%, which fell within the range of 26 percent to 36 percent established by the DODI, but exceeded the Army standard of 34 percent maximum body fat.

4. The studies that resulted in the revised DODI 1308.3 indicated that the screening weight tables were too stringent for women, which leads to inappropriate weight loss tactics among female service members. The studies also indicated the screening weight tables did not account for heavier bone densities in minorities, or for different body types amongst women.

5. The Army has yet to revise its regulation based on the studies in question, or as a result of the revised DODI 1308.3. It is still using the 1987 version of Army Regulation 600-9, which was in effect at the time of the applicant's discharge. As a result, it is unclear if there will be any change in the maximum allowable body fat standard for women in the age group of 28 through 39, which is currently 34 percent, which remains an acceptable standard under the revised DOD policy. However, in order to fully comply with DODI 1308.3, the Army has to revise the circumference sites and landmarks for females, which impacts the way body fat measurements are taken.

6. There were extensive medical evaluations completed on the applicant while she remained on active duty. These evaluations resulted in a determination that there was no underlying medical reason for her overweight condition. Further, as established in the prior Board considerations of this case, all requirements of law and regulation were met, and the rights of the applicant were fully protected throughout her separation processing. However, given the factors raised in the officially recognized studies that resulted in the revision of DODI 1308.3, it appears to serve the interest of equity and fairness to provide some measure of relief in this case.

7. Because the applicant's enrollment in the WCP, and separation processing were accomplished in accordance with the applicable Army regulations and DOD policy in effect at the time, it would not be appropriate to credit and pay her for the entire remaining period of her un-served enlistment through 3 April 2001, or to place her record before a STAB for MSG promotion reconsideration given her legitimate non-promotable status at the time.

8. However, based on her overall record of outstanding service for almost 18 years, and the issues presented in the GAO Report to Congress, Naval Health Research Center Report and United States Army Medical Research & Materiel Command Report, it would be appropriate to correct her record by voiding her 24 August 1997 discharge, and showing she continued to serve on active duty until qualifying for voluntary retirement.

9. In view of the facts of this case, the applicant's record should be corrected by voiding her 24 August 1997 discharge, and by showing she continued to serve on active duty until 31 January 2000, at which time she was honorably separated for the purpose of voluntary retirement; by showing she was placed on the Retired List in the rank of SFC/E-7 on 1 February 2002, after completing a total of 20 years and 24 days of active military service. It would also be appropriate to provide her back active duty pay and allowances due for the period 24 August 1997 through 31 January 2000, minus any civilian income she received for the period; and all back retired pay due as result of these corrections.

BOARD VOTE:

________ ________ ________ GRANT FULL RELIEF

A Bai MP GRANT PARTIAL RELIEF

________ ________ ________ GRANT FORMAL HEARING

________ ________ ________ DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

1. The Board determined that the evidence presented was sufficient to warrant a recommendation for partial relief. As a result, the Board recommends that all Department of the Army records of the individual concerned be corrected by voiding her 24 August 1997 discharge; by showing she continued to serve on active duty until 31 January 2000, at which time she was honorably released from active duty for the purpose of voluntary retirement after completing 20 years and 24 days of active military service; by showing she was placed on the Retired List in the rank and pay grade of sergeant first class/E-7 on 1 February 2000; by providing her any back active duty pay and allowances due for the period 24 August 1997 through 31 January 2000, minus any civilian income she earned during this period, and all back retired pay due as a result of these changes; and by removing all entries and documents pertaining to her enrollment in the weight control program and her separation from the Official Military Personnel File.

2. The Board further determined that the evidence presented is insufficient to warrant a portion of the requested relief. As a result, the Board recommends denial of so much of the application that pertains to completing the entire un-served portion of her last four-year enlistment; and to master sergeant promotion reconsideration by a Stand-By Advisory Board, with insertion of a non-prejudicial statement explaining non-rated time.

James E. Anderholm
CHAIRPERSON